I'm sure you have done this online OA before, but maybe it's been a while, so I will remind you all that when you are the one speaking, obviously you need to turn on your audio, but if you're the one listening, turn off your audio and then you switch with each other. And so we're ready to go. So this is case number 24-30241, United States of America v. Deare, and we will start with, and I'm sorry if I mispronounce it, Andre Belanger. Yes, ma'am. Very good. Andre Belanger. Thank you very much. All right. May it please the court. My name is Andre Belanger and I represent Mr. Jeremiah Deare, who's serving a 97-month sentence for conspiracy to deal without a firearms license, form-keeping crime, and a record-keeping crime. My client is, at the time of his conviction, was an honorably discharged veteran who owned Dave's Gun Shop and was prosecuted for buying and selling guns out of his personal collection at gun shows. This case here, in our opinion, looks to see, in the post-Bruin landscape, whether Congress may make it a federal felony simply to engage in the business of selling firearms without a federal license when there is no historical tradition for criminally punishing ordinary citizens for doing that. When looking at the Second Amendment, I turned to this court's decision recently where, you know, the sale of arms was considered necessary and corollary to the right to bear arms. And so, with that, the selling of guns is implicit in the text of the right to bear arms. And so, with that, the government is then given the burden to show a national historical tradition that is consistent with the regulation and law that they're seeking to uphold and also that this law that we have today that we're trying to uphold fits with the why and how of that. 922A1A is not a generic or modest licensing requirement. It's actually very intrusive. It requires a lot of paperwork. It requires a lot of detail. It creates basically a log of citizens who are gun owners and you're subject to the oversight by the ATF to do that. So, it's a pretty significant set of regulations and part of the problem that we have with it is that it is also subjective. What makes a hobbyist, what makes a commercial dealer for purposes of implicating the need for an FFL transaction is very subjective as the amount of guns to be sold is not, there's no threshold there and the frequency of sales is not determined either. So, within that subjective framework, Mr. Deere found himself being prosecuted for conduct taken at the gun shows. The government here in this case... Excuse me, but the government made the point that he kind of hid what he was doing with that because he didn't go get what he needed to get so he went and hid it. Isn't that a little different than just, Oh, I had a gun and I saw you and I sold it to you and ooh, I got arrested? I appreciate the question, Your Honor, but respectfully disagree with the government. Mr. Deere was selling these guns at gun shows out in the open. Other people were doing it as well, even some of the witnesses that testified at trial as to the nature of the gun shows. But he is an avid gun collector, an extreme hobbyist and he could add to his collection in the morning and liquidate something by the afternoon. He also had an FFL through Dave's.  Yeah, he had a shop and he could easily sell things through his shop. He could have easily have brought Dave's gun shop to the gun shows. But from his perspective, the guns that he was selling was from his personal collection and what he tried to establish at trial was one of the primary things that he was selling right after COVID here were bullets. The bullets were the driver of his sales at these gun shows so much that he had to reinforce his trailer. And so that was the primary purpose for him going to the gun shows and he would bring a group of guns with him to sell or trade. And while I don't pretend to have the, you know, the hobbyist enthusiasm that he has, that is his right to do that and to criminalize it especially on a subjective regulation for a law that has no national historical tradition I think unfairly places him in jail for a very significant period of time. Well, we can talk about how long he's in prison in just a minute but let me talk about first his conviction. I understand that if you have the right to guns there have to be sold in some way but the Second Amendment does not say that selling is part of it or that the person who is the seller is on it instead it is just the right of the people to keep and bear arms shall not be infringed. So while I understand there needs to be some selling that doesn't mean that the selling itself is on the Amendment 2. The issue that we have, Your Honor, is that the government could infringe on the right to bear arms by over-regulating the sale of those same firearms and in the case of people buying and selling firearms at gun shows I think you get into that murky area because it is subjective as to what constitutes a business and what is the liquidation of a hobby. As I said earlier, there's no definition on the amount of gun sales or over what period of time is necessary to convert someone into an avid hobbyist into a business entity and so by subjectively regulating and prosecuting people you implicitly infringe on the rights of the public to bear arms. So is your argument that no regulation is allowed or simply that this particular regulation is too burdensome? I'm saying that this particular regulation as applied to Mr. Deere is unconstitutional. There could be regulations dealing with safety that would be historical and so there could be a population of regulations that are constitutional but requiring someone to have a license for the sale of guns I do not believe under these circumstances is applied to Mr. Deere as constitutional. Just to be clear, as I understand it you make an argument which I understand which is the right to keep and bear arms has to include the right to buy and sell arms. Correct, Your Honor. And I understand where you're coming from there but I assume you would agree or let me ask you point blank are violent criminals allowed to keep and bear arms? I think it has been decided recently that certain categories of criminals cannot keep and bear arms. Right. So likewise would you say that there is a right to sell arms to those who are law-abiding but no right to sell arms to violent criminals or do you disagree with that? That's a good question. Certainly certain criminals cannot possess the firearms whether or not you want to penalize them. That's my point. If they're not allowed to possess would you agree that you're not allowed to sell? Knowingly selling someone that cannot possess a firearm would make you a principal to that crime, Your Honor. That doesn't necessarily mean that The period from the 24th you're not arguing that there's a right to sell to violent criminals? I'm not, Your Honor. I think that would make you a principal to the crime if you knew it. What do you make of the government's argument then given that understanding I take that to be a concession What do you make of the government's argument that that's all that this statute's about? It's just trying to prevent sales to violent criminals? I would disagree with it because it is not that narrow. Are you saying then that a licensing regime that was very limited very, very modest just tailored towards ensuring that sales don't go to violent criminals that that would be okay? It's just that this goes farther than that? I would agree with that premise I certainly would be open to that, Your Honor Obviously we'd want to see this statute What makes this regulation broader than that admittedly more valid regulation? The amount of government oversight here is not to be dismissed You have to catalog every weapon and to whom it goes to and there is no set definition on what constitutes the amount of sales necessary to trigger and implicate the law and that's really part of the problem I just do not see that broad category of regulating gun sales as part of the historical tradition here What is in the record of this case that indicates that this is a more burdensome regulation than it has to be? I think it says how it was applied to Mr. Deere He's not the only person that's going to gun shows selling large or numerous amounts of guns to individuals I guess what I'm asking is you're talking about that this is an unnecessarily burdensome way of preventing gun sales to violent criminals. Is there anything in the record indicating the amount of time that it takes to comply with these paperwork requirements or the cost or the delay or is it just an assertion that you're making on appeal? It's fine if that's it You know the record better than I do Is there anything in the record by way of evidence that indicates the level of burden here? No your honor because the level of burden was not something that was germane to the trial Perhaps if the case is remanded and this kind of gets into the second question as to how should this type of challenge be raised then there could be an evidentiary record developed on the burden but for purposes of this case that was not presented by the government nor myself at trial I see I have two minutes left I'll just address briefly the second question posed by the court I do believe that challenges to the gun regulation is something that should come in a motion to dismiss pretrial absent that also on appeal and then depending on how it was raised would determine maybe the standard of review I do not think that this is something that the government should be allowed to present to a grand jury in secrecy on an instruction and I certainly do not think that a jury should be tasked with determining the historicity I think that would perhaps create a whole cottage industry of trial experts on history Do you want to say anything about the sentence? I interrupted you on that because we were talking about the conviction but if you want to mention something on the sentence you have about a minute Your honor I just think it is excessive for a first offender this person, my client was honorably discharged he served in actual combat overseas as part of a bomb unit he had been through a lot guns are a hobby of his it is his lifeblood that is why he joined the military he did not need to sell these guns that gun shows for profit he had VA income he lived within his means he had income from the store and his wife had some income as well and so if profit is the major motive for triggering whether or not you need an FFL I understand I lost the trial but even with that concession of losing the trial I do think that imposing consecutive sentences upon him for the counts was excessive and so I'll just rest with that your honor Thank you, you saved time for rebuttal We will now turn to William Glasser who represents the US May it please the court May it please the court William Glasser for the United States The Gun Control Act's modest licensing and record keeping requirements do not violate the second amendment The question here is whether there is a burden on the right to keep and bear arms that is inconsistent with the historical tradition Mr. Deere cannot show that the licensing and record keeping requirements impose a burden either on his right to keep and bear arms or on his purchasers right to keep and bear arms that is inconsistent with history The Supreme Court has noted going back to Heller that it was not calling into question laws imposing conditions and qualifications on the commercial sale of arms More recently in Bruin in footnote 9 the court made clear that it wasn't calling into question shall issue licensing schemes that had background checks involved If I may, let's talk about footnote 9 Does footnote 9 of Bruin specifically reserve the possibility that licensing regimes would be overly burdensome which I take to be counsel's argument in this appeal Absolutely, your honor. Yes, it does say that there could be lengthy wait times or exorbitant fees We're not disputing that there could be some licensing regime that would be too onerous There hasn't even been an allegation by Mr. Deere that this was too onerous in terms of exorbitant fees The licensing fee set by statute is $200 for three years and a renewal is $90 That's for someone engaged in the commercial sale of arms Well, he's certainly arguing today that it's too burdensome Is your point that this was forfeited below? Your honor, it certainly wasn't made below and I didn't even see anything in his briefing suggesting that the fee was exorbitant and it would be surprising to conclude that a $200 fee I think he's talking about paperwork I don't know that he mentioned the fee today but he's talking about paperwork and it's just burdensome He admitted that there's nothing in the record below but he's open to a remand Sure So your honor with respect to the record keeping we won't dispute that keeping paperwork the acquisition and disposition records is some burden but it's not a burden that is inconsistent with the Second Amendment right or historical tradition There's no allegation here that this record keeping requirement prevented anyone from getting firearms within a reasonable time so you didn't have unreasonable lengthy delay that Bruin footnote 9 suggested might be problematic There is a burden imposed on the firearm seller but it's something that thousands of FFLs do every day when they engage in firearm sales to lawful citizens and it's something that firearms that FFLs have been doing since 1938 when the FFL system was first created slightly more onerous today but now everything can be done electronically and people can get in and out of an FFL in a matter of 30-60 minutes perhaps with a new firearm so to the extent he's raising the Second Amendment rights of the purchasers, it's a very modest burden to undergo that background check. It's something that Mr. Deere himself did for all of the purchasers in his store. Well, perhaps not all. There were a few that didn't happen and then as it relates to himself I think there's a real question about whether he can claim that as a seller he has a Second Amendment right to dispose of firearms in the most expeditious way without any record-keeping requirement but even assuming that's the case he hasn't shown that the requirement to keep paperwork infringes upon his Second Amendment rights to the extent he has them. Counsel, can we back up for a minute? I appreciate this discussion because I agree this is where we need to go in resolving the case but I was most troubled by an argument you made at the very beginning of the brief that you skipped over this morning and I want to make sure I'm clear about where the United States is on this. Does the Second Amendment apply to the commercial sale of firearms, yes or no? Yes, it does apply to the commercial sale of firearms. I appreciate that very much. So you agree that we need to split from the Ninth Circuit and to share a and the position of the United States is you're inviting us to do that because to share it was wrong. Your Honor, I'm not sure that it would be a direct split with the Ninth Circuit. Obviously the Ninth Circuit was pre- You could understand the Ninth Circuit as having said two different things. You could understand it as saying there's never any Second Amendment concern with restrictions on commercial sale of firearms. The United States would not agree with that. I think it can also be read as saying that  on the commercial sale of firearms are sort of presumptively lawful as Heller indicated and that at least regulations that prevent the disposition to those with criminal backgrounds and things like that are not unconstitutional. But we do agree that it's not the case that Congress could simply prohibit the sale of firearms were not that would infringe on the Second Amendment. I hope I clarified that. I don't think the Court needs to directly split with the Ninth Circuit. Well, let's just be really specific about it because there seems to be a dispute in the briefing about the difference between commercial sale and And so the sentence that got my attention, this is page 30 of the red brief. The Second Amendment does not protect commercial sales of firearms for its own sake. And I take it that your position today is no, in fact the Second Amendment does protect the commercial sale. It's just that the particular 922A regulations are not inconsistent with history and tradition and the rest of the argument that you made in the first five minutes today. Your Honor, I think the key word there would be for its own sake. We think that regulations on the commercial sale of firearms implicate the Second Amendment to the extent that they impinge on the ability of buyers to keep and bear arms. And I think that's consistent with this Court's decision in McCrory where the Court said the right to keep and bear can implicate the right to purchase. But this Court, I think, said essentially in McCrory said exactly the same thing as the Ninth Circuit did. So I don't see any inconsistency there and I certainly don't think that you need to wade into that further in order for us to win because we are not raising third party standing or disputing that the Court should undergo a Second Amendment analysis in this case. It is a curious sentence though, don't you think? I'm not sure what it means to engage in a commercial sale of firearms for its own sake. Every sale has a buyer and a seller. Your Honor, and so I think the point of that sentence was that it doesn't protect the sale of firearms simpliciter but it does protect the right to keep and bear arms and that implicates the right to sell as this Court said in McCrory. How would I otherwise acquire the arms that I need to keep and bear if I couldn't buy them? Are you saying that my only way that I can exercise my Second Amendment freedom is to manufacture my own firearms? No, Your Honor. Again, we're absolutely recognizing that in order to keep and bear arms, you need to be able to buy them. That's all I need to do. But, I mean, to me, while I understand that, there is a difference between me being the buyer and you being the seller and what the rules are for each one of us. Isn't that correct? You know, there's all kinds of places in our country that are selling things that have to do certain things to be able to sell them and yet, when I walk in and buy, I don't have that same rule. So, isn't that the point that you're making? Your Honor, that's essentially it. The analysis that the Court needs to undertake here is really whether or not there is an infringement on the right to keep and bear arms. That's what the Second Amendment protects and we do not dispute that until this conviction in this case, Mr. Deere had the right to keep and bear his own firearms, right? Don't dispute that at all. We're not really even disputing that the Second Amendment protected his right to run a firearm business and sell arms. I think the real key here is that if he was going to be a seller of arms, he needed to comply with the modest licensing and record-keeping requirement and to the extent he's raising his rights or other people's rights, that requirement does not infringe the Second Amendment. I think it's an interesting and important, in some contexts, academic dispute, but I don't think that the Court needs to resolve here the exact nature of his right to sell arms to the extent that exists. So, in order to affirm you, we would not have to disagree with the Ninth Circuit? No, Your Honor, and I take this Court's decision in McCrory to have essentially agreed with the Ninth Circuit that the right to keep and bear arms implicates the right to purchase, but doesn't protect a stand-alone right to sell. I feel like we're just going around in circles. I mean, who's right? If you don't have a right to sell, how am I supposed to buy? We can sit here and do this all day, but the real question is not, is it a right to sell or a right to buy? The question is, does the Second Amendment apply to the commercial sale? Because in the Supreme Court, there's another context, which is we can talk about whether we have the right plaintiff, should it be the buyer, should it be the seller, but if the Second Amendment applies to the sale, which I think at least in half of the answers you've given, you've said yes, and the other half, I suppose, you've said no, but when I'm asking the question, it seems like you're agreeing with me that it obviously has to apply to the sale, because otherwise, there's no way to get the firearms into commerce. The transaction has to be protected by the Second Amendment. Your Honor, I would agree the transaction does, if you're thinking about the sale as a transaction. So, again, we're not disputing that this Court should undertake a Second Amendment analysis. We're simply pointing out that I think Mr. Deere has done a poor job asserting even what constitutional right is at issue here. He seems to think that he seems to be focusing just on his right to sell without any fetters at all, without any regulatory hoops to jump through, and we don't think the Second Amendment protects that narrow right, but we're happy to assume for the sake of argument that the Second Amendment protects the transactions that he engaged with his customers, and therefore undertake a full Second Amendment analysis. Okay. Well, I'm going to phrase the next question, and I'm going to do it in a way that I hope can get away or allay this complication. Suppose I am a purchaser of firearms, and I'm a purchaser of firearms in 1791. What would be the history and tradition of making me go to a licensed firearm seller? And we can debate whether it's modest, or burdensome, or wait periods, or license fees, or FFL requirements, or whatever, but who was licensing the transaction in 1791? Your Honor, as a general rule, no one was licensing the transaction in 1791 with respect to a sale of firearms. There were, as we point out in our supplemental brief, there were licensing requirements in some jurisdictions for the transportation of gunpowder. There were restrictions on the sale, the but there wasn't anything identical to the Gun Control Act in 1791, and the Supreme Court I think has recently clarified in Raheny that we don't need to find a historical twin, and the question is whether there is a historical principle that justifies the modern law, and as Justice Barrett pointed out in her concurrence, the fact that founding era legislatures didn't legislate to the maximum extent of their constitutional ability doesn't mean we should infer that something that didn't exist at the founding is unconstitutional today. And so, if I can... Judge Ho made the point to your opponent about the need to make sure it's not going to some violent felon, and so the fact that there are some restrictions, some requirements, so on and so forth, to me doesn't mean there is no selling. I agree if he said nobody can ever sell any gun, that would be a different arena than the one we're in right now, right? I certainly agree with that, Judge Haynes. What the Gun Control Act does is it actually establishes for the sellers, those like Mr. Deere, it establishes a shall issue scheme, so in order to sell, to obtain an FFL, you have to not be prohibited from possessing weapons and meet a few other very simple statutory requirements, and if you're denied an FFL, you actually have a right to appeal that denial. As it relates to purchasers and the restrictions on those transactions, it just says you cannot sell to those that are prohibited under section 922G and N, and so it essentially duplicates the requirements in 922G and 922D. What does that have to do with the licensing regime? Your Honor, that relates to the licensing regime in the sense that that is what, that's the purpose, the why for historical comparison of the Gun Control Act's licensing regime. I don't get it. So I, you would agree I have a firearm. I would like to sell it to my neighbor. My neighbor comes to me and says hey, would love to buy your firearm. I'm having a really hard time down at Dave's Gun Shop because I'm a felon. Can I get your gun? And obviously I can't because 922 prohibits me in a private sale from selling my firearm to the felon. So the felon prohibition thing that Judge Ho and Judge Haynes were both discussing applies regardless of whether I am licensed, have an FFL prior to the Gun Control Act, does an independent statutory prohibition, and if Mr. Deere sold a gun to a felon, he would be committing an independent felony that has literally nothing to do with the paperwork requirement. Your Honor, I mean, I would agree with you that he's committing an independent felony. I don't think it's completely divorced from the paperwork requirement, though, and the reason is that as long ago as 1938 in the Federal Firearms Act, Congress recognized that those who are importing, transporting, and selling firearms, although they certainly don't represent every firearms transaction, they have a significant impact on the commercial activity in firearms in the United States, and that's why Congress imposed a licensing requirement so that Congress can ensure that people who are doing this as a business, not as a hobby, not on a one-off transaction, are complying with federal law. And so I think the FFL system and the checks that are in place, particularly since 1992 in the background check system, is highly relevant to making sure that firearms don't fall into the hands of those who are prohibited. So my understanding is that approximately 75% of people who obtain firearms obtain them from an FFL. I don't know whether that's exactly right, but it's a substantial number, and in all those cases, FFLs because of their obligation to comply with the background check requirements are not taking someone's word for whether or not they're a felon or some other prohibited category, but are actually ensuring that against the federal database. But even that doesn't require licensing, necessarily, right? I mean, you could have not only the prohibitions that you all just talked about, but a requirement of a background check on every sale just to deal with a situation where people don't know whether to trust the buyer. Why do you have to go so far as to go to a licensing regime? Your Honor, I think it would be a little bit switched in that I think this does not go as far as a requirement of a background check for every private-to-private firearms transaction. What this does is it ensures that those who are engaging in firearms sales as a livelihood have to conduct these background checks. So I think this is more modest than a universal background check system. And, again, it's... But that's the point. Why not? You could just say, in order to do a sale, you have to do a background check. You don't actually need to go through a licensing regime. That's my question. Well, so, Your Honor, I think assuming that Congress could do that, and I actually don't know what the Department's position is on universal background checks, so I don't want to make any representations, but assuming that that would be perfectly permissible, Congress doesn't have to use sort of the most narrowly tailored means of ensuring the firearms don't fall into the wrong hands. In fact, I think Bruin rejected that kind of narrow tailoring rule when it rejected the means and scrutiny. I appreciate that you're focusing on the law. I do have just sort of a practical question, which is why, given the background check requirements, as I understand already exist, and pardon me if I'm ignorant about that, what's the need to superimpose an additional licensing requirement? Your Honor, the background check system is only required for those who are licensed. You're right, but why not just say, you know what, we don't need a license. That's excessive. That's unnecessarily burdensome. It is very important to have a background check because we want to make sure these sales don't ever go to somebody who's prohibited, namely violent criminals. But as long as you've done the background check, that's all we need. We don't need a license. What would be the argument against that from your standpoint? Your Honor, I'm actually not sure. I think if universal background checks were adopted, then perhaps the licensing requirement wouldn't be necessary, but I think it's part of the broader Gun Control Act regulation on the importation of firearms. The FFL requirement doesn't simply apply to dealers. It applies to those who are importing firearms from other countries. The license makes sure that you have that interaction with that entity, and you make sure that they are doing it. It's a little bit like your driver's license. You need to be sure that person can do that. Why do we have to keep going and redoing our license every so often? It's because we want to be sure people can do it. Isn't that what you're saying? Yes, essentially our view is that everyone who is engaging in regular and repeated firearms transactions to the point that they are actually dealers under the statutory definition that we're ensuring that those people are complying with federal law respecting sales to prohibited persons and are conducting those background checks that Congress set up for FFLs in the 1990s. I see my time has expired. I'm happy to answer the questions. I do have one question. You appropriately invoked Footnote 9 very early in your argument. Of course, Footnote 9 is about those who want to possess Footnote 9 is about licensing for those who want to possess a firearm. It's not explicitly, at least, about those who want to sell. I agree, Your Honor. That's right. I don't think Footnote 9 perhaps has quite the same preclusive force in this case as it would, for example, in McRory or in Peterson the court's decisions that have found that shall issue schemes are presumptively constitutional and upheld the schemes there. I think it's only a very small logical extension of Footnote 9 particularly because getting back to the earlier perhaps confusing exchange, there's not the standalone right to sell firearm sales only implicate the Second Amendment to the extent they impinge on the right to keep it bare. If you can have a background check requirement in order to acquire a firearm then I don't see how that would be unconstitutional as applied to the person who is selling you the firearm. Pardon my ignorance, do you happen to know whether at the time of the founding there was a licensing scheme for the possession of firearms? Your Honor, there was no general licensing scheme for the possession of firearms. No. There were as it related to militia arms, which is a very different thing, there were roles that kept track of those arms but simply privately possessed arms there was not. I think at the founding and yet for some reason Footnote 9 essentially says that they're allowed as long as they're not burdensome. Yes, Your Honor. It's true, yes. I think there are several times in both Pallor and Bruin where the court says things and we take those as given. I think especially a lower court has to take it as a given even though the court didn't necessarily do all of its own work or show all of its work with us. One quick point. I heard, counsel, you embraced Judge Haynes' reference or analogy to driver's licenses and other forms of licensing regimes. Does the Constitution protect my right to drive? No, Your Honor. It does not. Does it protect my right to purchase any other product other than firearms? Not that I'm aware. I can't think of anything off the top of my head, Your Honor. Perhaps contraception. I can't think of many examples. I wasn't saying that was part of the Constitution. I was just saying that there are needs for that to get things done properly. That's my point. The Second Amendment does not say anything about sales. We're moving, moving, moving to get to sales for the same reason that I was talking about. I'm sorry, Judge Oldham. I wasn't trying to say that a driver's license was on the amendment, a Second Amendment or anything else. The point being, though, that you just need to make these things clear and covered properly.  Yes, Your Honor. I think that's right. If we're analogizing this to the other constitutional context, there are going to be other situations, the First Amendment, for example, where the right to speech may embrace the right to acquire paper, for example, to print your broadside or your newspaper. Right. That's a whole different arena. We could probably talk all day, but unless my colleagues have any more questions, I'll let you stop arguing and we'll get back to the rebuttal. Thank you. We'd ask the Court to affirm. Okay. Go ahead. Thank you, Your Honor. I will say that briefly in rebuttal that the right to sell arms is necessary for someone's right to bear arms. In listening to the government's argument, it seemed to me suggesting that Mr. Deere has to show how he is burdened by a particular law or regulation, but I do think that the burden is on the government once we concede that the Second Amendment applies here. In listening to their argument, I think I heard more or less a concession that there was not necessary a licensing scheme back in 1791. I didn't really hear what analogous principle we would have to justify the FFL licensing scheme from that time period, and it was suggested, at least the way that I heard it, is that these record-keeping requirements really were a product of 1938 legislation that has evolved over time. With that said, I don't think that they'll ever be able to meet a historical burden to show the need for the FFL licensing requirement, which is the genesis of... The government's council, I think I heard earlier today, indicated that your argument today about this regime being overly burdensome was not an argument you presented in the district court. I want to give you a chance to respond to that. So, the... Mr. Deere having to show there was a burden imposed on him was not placed before the district court, because I do not think it's required. The burden is on the government to show the historical tradition, but to the extent that Mr. Deere would be required to show a burden, I think remand would be necessary to do that. That was not part of the underlying court record, Your Honor. But I don't think the government will ever be able... I think the burden is on the government, first of all, and I don't think that they'll be able to show that they've met their burden of a national historical tradition requiring an FFL licensing scheme. And with that, I would rest my time. Okay. Thank you both very much. We appreciate y'all's argument and we appreciate both of y'all's service, the CGA and the DOJ. We appreciate y'all's service. And the case is now under submission. Thank you and we'll let you go. Thank you all very much.